# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. ANGEL CLASS, (#R33776), | )<br>)<br>) |
| Petitioner, | )<br>) |
| v. | ) Case No. 10 C 2819 |
| YOLANDE JOHNSON, Warden, Tamms Correctional Center, | )<br>)<br>)<br>) |
| Respondent. | )<br>) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Angel Class' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Class' habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).[1]

## BACKGROUND

Class does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's opinion on direct appeal, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo,* 590 F.3d 533, 537 (7th Cir. 2010). The Court therefore adopts the underlying facts in *People v. Class*, No. 1-04-2930 (Ill. App. Ct. 2006) (unpublished).

### I. Factual Background

On the evening of October 22, 2001, the victim, Tony Konewicz, died from a gunshot

---

[1] To date, Petitioner has failed to file his reply brief in support of his habeas petition that was due by August 9, 2010.

wound that lacerated his lungs and heart. At Class' bench trial, Heather Ambrose testified that around 7 p.m. on October 22, 2001, while she was in bed at her grandparent's house feeling sick, Class and Elijah Salazar knocked on her bedroom window. Ambrose knew Class and Salazar because the three of them had grown up in the same neighborhood. Further, Ambrose testified that Class and Salazar were both members of the Satan Disciples street gang. After knocking on her window, Class and Salazar asked Ambrose to drive them around in her car. While Ambrose drove, Class sat in the front passenger seat and Salazar sat in the back seat. At first, the group drove around the neighborhood. Eventually, Class told Ambrose that he wanted to stop at a particular house. On the way to the house, the group stopped at a red light at the corner of Grand Avenue and Oakley Street in Chicago, Illinois. Class then told Ambrose to turn right on Oakley Street. Ambrose – who was familiar with the territorial boundaries of the Satan Disciples and a rival gang called the C-notes – testified that she was uncomfortable making this turn because she knew it would lead them into C-notes territory. Nevertheless, Ambrose complied with Class' directions and made the turn onto Oakley Street.

Ambrose also testified that she continued to drive down Oakley Street until Class said that he saw his cousin's car, which was a red, four-door parked on Ohio Street. Ambrose further explained that at Class' direction she turned right onto Ohio Street heading toward the red car. As she drove, Ambrose noticed that Class had his right hand inside his sweatshirt pocket while he used his left hand to roll down the passenger-side window. Ambrose then pulled up next to the red car. Ambrose testified that there was about one to two feet separating her front passenger side and the driver's side of the red car. Also, Ambrose testified that Class then leaned out of the passenger side window like he was going to talk to the person in the driver seat of the red

2

car. When the driver of the red car began to roll down his window, Class pulled a gun out of his sweatshirt, aimed at the red car, and began firing the gun.

Ambrose further testified that while Class fired the gun, he yelled, "S.D. bitch," "Now I have got you," and "C-note killer." Ambrose testified that she saw Class fire two shots and heard glass shattering. After the first two shots, Class instructed Ambrose to keep her eyes forward and not look at him after which she complied. Ambrose further testified that she did not see what Salazar was doing in the back seat of her car. Also, Ambrose stated that Class continued to fire until the cartridge emptied and his gun made a clicking noise. At that point, Ambrose pulled away from the red car and drove down Ohio Street. She looked back through her rear-view mirror and observed the red car making a wide u-turn and driving off in the opposite direction. As Ambrose drove away, she heard Class say "we finally got them."

Ambrose testified that she then dropped Class and Salazar off at Class' home and proceeded to her grandparent's house. The next morning, Class called Ambrose informing her that he and Salazar were coming over to clean her car. After Class and Salazar arrived, the group, including Ambrose, picked up Class' friend, Patty Petrey, and drove to a nearby car wash. On the way to the car wash, Ambrose heard Class tell Petrey: "[W]e shot that bitch. We finally got him." At the car wash, Class, Salazar, and Petrey scrubbed down the dashboard and windows and vacuumed the floors. After the car wash, Class told Ambrose to go straight home and not to talk to the police.

Three days later, Class asked Ambrose when she was returning to Kentucky. Ambrose responded that she planned to return when she had enough gas money. Later that day, Class gave Ambrose $80 for gas money and told her to go back to Kentucky. Ambrose testified that

3

Class threatened to kill her and blow up her grandparent's house if she told the police or anyone else about the shooting.  Class instructed Ambrose that if the police contacted her, she was to say that

she had not seen him on the day of the shooting and that she was at home all day.  Ambrose testified that she drove to Kentucky the following day.  In addition, Ambrose testified that about a month and a half later, police detectives came to question her.  She told the detectives that she was scared to talk to them.  After they assured her that they would do their best to make sure nothing happened to her or her grandparent's house, Ambrose told them what she witnessed on the night of the shooting.

On cross-examination, Ambrose testified that although she had a tattoo associated with the Satan Disciples, she was not a member of the gang.  Also on cross-examination, Ambrose acknowledged that she had been convicted in federal court of aiding and abetting aggravated criminal sexual abuse.  She also testified that she had smoked marijuana the evening of the shooting.  Furthermore, Ambrose admitted that when she first spoke with the police detectives, she denied knowing anything about the shooting and lied by saying that she had loaned someone her car on the day of the shooting.  On redirect examination, Ambrose testified that she was not able to get a look at the driver of the red car, but that the driver rolled down his window when Class started shooting.  She also stated that she did not see anyone other than Class shooting out of her car.

At trial, Gerard Racasi, a member of the C-notes gang, also testified.  He stated that he was the front passenger in the victim's car during the shootings.  The two were parked on or near Ohio and Leavitt Streets in Chicago smoking marijuana just before the shooting.  Racasi testified

that he heard nine or ten shots fired, but he ducked down in the front passenger seat so he was unable to see who fired the shots. Also, Racasi testified that after the shooting, the victim turned the car around and attempted to drive to the hospital. Racasi, however, had to drive to the hospital because the victim could not.

At trial, Chicago Police Officer Luis Arroyo testified that around 10 p.m. on the night of the shooting he was dispatched to the hospital where the victim was receiving medical care. At the hospital, Officer Arroyo spoke with Racasi and then examined the victim's red car in the hospital's parking lot. Officer Arroyo observed the shattered driver-seat window and bullet holes on the driver's side door. Thereafter, he went to the crime scene where he discovered shattered glass lying on Ohio Street near the intersection with Leavitt Street. In addition, Chicago Police Officer Robert Davie, a forensic investigator, testified that he and his partner recovered two fired bullets and nine fired cartridge cases at the crime scene. Officer Davie and his partner also went to the hospital where they photographed the red car and recovered one bullet from the front driver's side door.

The parties stipulated that Forensic Investigator T. Hanley recovered an additional bullet from the inside rim of the driver's side front wheel. Trial testimony also revealed that the police officers properly transferred all firearms evidence to the Illinois State Police Crime Lab for testing. The testing established that the nine fired cartridge casings had no fingerprint impressions suitable for comparison. The testing also established – and the parties stipulated – that the bullets and cartridge casings recovered at the scene and the bullets recovered from the red car were all fired from the same weapon. The parties also stipulated that the autopsy performed on the victim properly identified the cause of death as a gunshot wound of the

5

shoulder lacerating his lungs and heart and that the bullet recovered from his body came from the same weapon as did the other firearms evidence.

Chicago Police Detective Robert Rodriguez testified that he learned of Ambrose's involvement in the shooting from an anonymous source. About a month and a half after the shooting, Detective Rodriguez and his partner interviewed Ambrose. Ambrose initially denied having knowledge about the shooting, but eventually admitted that she actually knew more.

Also, Chicago Police Officer Miguel Delatorre testified that, on April 27, 2002, pursuant to an arrest warrant in connection with the victim's death, he and other officers were dispatched to a house where Class' mother resided based on information that Class was there. According to Officer Delatorre, when they arrived, Class noticed them while he stood in front of the house after which he ran into the back. The officers, however, managed to arrest him there.

Class called two witnesses at trial. Milton Correa testified that he knew Salazar from the neighborhood and that during a drug transaction after the victim's death, Salazar discussed the shooting with him. After Correa's initial testimony, the trial court sustained the State's hearsay objection as to the specific details of that conversation. Next, counsel called Class to testify on his own behalf. Class admitted to being a member of the Satan Disciples gang and to knowing Salazar and Ambrose, but claimed that he had no involvement in the victim's murder. On cross-examination, the court admitted certain copies of Class' prior drug-related convictions into evidence.

II. **Procedural Background**

After a bench trial, the Circuit Court of Cook County found Class guilty of first degree murder with a firearm and aggravated discharge of a firearm and sentenced Class to 45 years in

6

prison. On direct appeal, Class raised three claims: (1) the trial court abused its discretion when it extended, by thirty days, the statutory speedy trial period within which to try him; (2) the trial court abused its discretion in refusing to allow hearsay testimony from Milton Correa showing that Salazar admitted to being the shooter; and (3) the State did not prove him guilty of first degree murder beyond a reasonable doubt because Ambrose was not a reliable witness. On March 3, 2006, the Illinois Appellate Court affirmed the judgment of the Circuit Court. Class then filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois raising the following claims: (1) the trial court abused its discretion when it extended, by thirty days, the statutory speedy trial period within which to try Class; and (2) the State did not prove him guilty of first degree murder beyond a reasonable doubt because Ambrose was not a reliable witness. On May 24, 2006, the Supreme Court of Illinois denied Class' PLA. Thereafter, Class filed a petition for a writ of certiorari that the United States Supreme Court denied on October 6, 2006.

On August 8, 2006, Class filed a pro se postconviction petition pursuant to 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County arguing that: (1) his trial counsel was ineffective for failing to present alibi witnesses and eyewitnesses who would have cast reasonable doubt on the State's case; and (2) he was denied his right to confront witnesses when, at the grand jury proceedings, he was not allowed to cross-examine Salazar, who ultimately did not testify at Class' bench trial. Class attached affidavits to his postconviction petition signed by Martha and Margarita Castillo, who averred that they would have testified that Class was with them on the night of the incident. Class also filed a supplemental postconviction petition arguing that he had a constitutional right to a free copy of his trial transcript.

The Circuit Court of Cook County dismissed Class' postconviction petition on November

7

16, 2006. Class appealed to the Illinois Appellate Court raising the same ineffective assistance of counsel claim, namely, that his trial counsel was ineffective for failing to present alibi witnesses and eyewitnesses who would have cast reasonable doubt on the prosecution's case. Class also brought two other claims: (1) that his mittimus should be amended to reflect 858 days of pre-sentence custody; and (2) that the Circuit Court should amend his mittimus to reflect a conviction for a single count of first degree murder because there was only one victim. On December 12, 2008, the Illinois Appellate Court affirmed the judgment dismissing Class' postconviction petition. Class then filed a PLA in the Supreme Court of Illinois raising his ineffective assistance of counsel claim that counsel did not investigate or call certain alibi or other witnesses in his defense. On May 28, 2009, the Supreme Court of Illinois denied Class' PLA.

### III. Habeas Claims

On April 29, 2010, Class filed the present pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254(d)(1). Construing his pro se allegations liberally, *see McGee v. Bartow,* 593 F.3d 556, 565-66 (7th Cir. 2010), Class brings the following claims: (1) his trial counsel was ineffective for failing to call alibi witnesses and eyewitnesses who would have cast reasonable doubt on the prosecution's case; (2) the trial court erred in refusing to allow hearsay testimony from Milton Correa showing that Salazar admitted to being the shooter; and (3) the trial court abused its discretion when it extended, by thirty days, the statutory speedy trial period within which to try him.

**LEGAL STANDARDS**

I.      **Habeas Standard**

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). Habeas relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Brown v. Finnan,* 598 F.3d 416, 421 (7th Cir. 2010). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405; *see also Brown,* 598 F.3d at 421-22.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407; *Brown,* 598 F.3d at 422. "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable.'" *Bennett v. Gaetz,* 592 F.3d 786, 790 (7th Cir. 2010) (citation omitted); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original). To be considered objectively unreasonable, a state court's decision must be "well outside the

9

boundaries of permissible differences of opinion." *Bennett,* 592 F.3d at 790 (citation omitted). Put differently, to be reasonable, a state court's decision must be "at least minimally consistent with the facts and circumstances" of the case. *Williams v. Thurmer,* 561 F.3d 740, 746 (7th Cir. 2009); *see also Wood v. Allen,* 130 S.Ct. 841, 849 (2010) (state court's factual finding not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance.").

## II.   Exhaustion and Procedural Default

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies available to him in state court. *See Gonzales v. Mize,* 565 F.3d 373, 380 (7th Cir. 2009); 28 U.S.C. § 2254(b)(1)(A). To clarify, a habeas petitioner must fully and fairly present his federal claims to the state courts before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Sturgeon v. Chandler,* 552 F.3d 604, 610 (7th Cir. 2009). "A procedural default occurs where a habeas petitioner 'has exhausted his state court remedies without properly asserting his federal claim at each level of state court review.'" *Crockett v. Hulick,* 542 F.3d 1183, 1192 (7th Cir. 2008) (citation omitted). Procedural default precludes a federal court from reviewing a petitioner's habeas claims. *See Johnson v. Pollard,* 559 F.3d 746, 752 (7th Cir. 2009).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider his claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as

"some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Smith v. McKee,* 598 F.3d 374, 382 (7th Cir. 2010). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496; *see also Smith,* 598 F.3d at 387-88.

## ANALYSIS

I. **Ineffective Assistance of Counsel – Claim I**

First, Class maintains that his trial counsel provided constitutionally ineffective assistance of counsel for failing to investigate, locate, and call several alibi witnesses and eyewitnesses at trial in violation of the Sixth Amendment to the United States Constitution. To establish constitutionally ineffective assistance of counsel, Class must show that (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Class fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant."); *see also United States v. Taylor,* 569 F.3d 742, 748 (7th Cir. 2009) ("Courts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of counsel's actual performance.").

In his postconviction appeal to the Illinois Appellate Court, Class argued that his counsel

was constitutionally ineffective for failing to investigate, locate, and call several alibi witnesses and eyewitnesses at trial. Class supported his postconviction petition with the affidavits of Martha and Margarita Castillo, who averred that they were with Class at their home from 7:30 p.m. on the night of the shooting until the next morning at 8:00 a.m.

In rejecting the alibi aspect of Class' ineffective assistance of trial counsel claim, the Illinois Appellate Court stated:

> [I]n the instant case the two affidavits attached to [Class'] petition did not establish an alibi for him. Ambrose testified she met with [Class] and Salazar at about 7 p.m. and that, after the shooting on Ohio Street, she immediately drove [Class] and Salazar to [Class'] home on Lorel. The two affidavits in support of [Class'] petition state [Class] was with his family in their home on Lorel from 7:30 onward. The affidavits do not provide [Class] with a conclusive alibi for the time when [the victim] was killed and in fact they dovetail with Ambrose's testimony of taking [Class] home after the shooting. Here [] where the affidavits do not establish a conclusive alibi for [Class], his trial attorney's decision not to call those witnesses was reasonable and did not rise to the level of ineffective assistance.

(Ex. M, 12/12/08, Postconviction App. Order, at 6.)

The Illinois Court of Appeals' decision is a reasonable application of *Strickland* under the circumstances because it lies well within the boundaries of permissible differences of opinion. *See Woods v. Schwartz,* 589 F.3d 368, 378 (7th Cir. 2009). Specifically, the Illinois court reasoned that because Class' alibi witnesses did not establish a conclusive alibi, counsel's performance was not constitutionally ineffective for failing to call any such witnesses. *See Smith*, 598 F.3d at 385. Moreover, any such inconclusive alibi testimony would not have created a reasonable probability of a different outcome under the *Strickland* prejudice prong. *See id.*; *Woods*, 589 F.3d at 378.

As far as Class' ineffective assistance of counsel argument based on eyewitness

12

testimony, the postconviction Illinois Appellate Court stated in pertinent part:

> [Class] also alleges on appeal that his attorney was ineffective for failing to investigate or interview an eyewitness to the shooting who allegedly told the police defendant was not the shooter. The postconviction petition had asserted there were two witnesses whom his trial attorney failed to call at trial, but the petition did not identify either alleged eyewitness. On appeal, [Class] contends his trial attorney was ineffective for failure to investigate, locate and call "potential eyewitnesses," but he refers to only one alleged eyewitness. His sole support for this claim is a police department general progress report attached to his postconviction petition that gave a second-hand account by an unidentified girl to Clara Rivera in which the girl stated the shooter was "Rey." The girl told Rivera the victim was shot in the street as he exited an alley on foot, but this account of the shooting was contradicted by trial testimony and evidence, unchallenged by [Class], that the assailant fired at [the victim] as he sat in his car, not standing in the street.
>
> Critically, the unidentified girl's statement does not exonerate [Class] as the shooter, as [Class'] petition contains no assertion that "Rey" is not a nickname attributable to him. Moreover, there is no corroboration to [Class'] claim that his attorney made no effort to investigate and find the alleged eyewitness, and his assumption that investigation would have located the eyewitness who claimed "Rey" was the shooter is mere speculation. An attorney has a duty only to make reasonable investigations or to make a reasonable decision which makes particular investigations unnecessary, and the reasonableness of a decision to investigate is assessed applying a heavy measure of deference to the attorney's judgment. *Strickland*, 466 U.S. at 689.

(Ex. M, Order at 7-8.)

The Illinois Appellate Court's decision concerning the eyewitness testimony is a reasonable application of *Strickland*. In particular, the Illinois court concluded that trial counsel's failure to investigate an unidentified girl's statement that a person named "Rey" was the shooter was not unreasonable, especially in light of the statement's inconsistency with unchallenged trial testimony that the assailant fired at the victim while sitting in a car – not on the street as the unidentified girl stated. *See United States v. Recendiz,* 557 F.3d 511, 531 (7th Cir. 2009) (there is a "strong presumption that the attorney performed effectively"). As such, the

13

Illinois Appellate Court's decision is consistent with the facts and circumstances of the case. *See Williams,* 561 F.3d at 746. The Court therefore denies Class' first habeas claim.

## II. Right to Present a Defense – Claim II

Next, construing Class' pro se habeas petition liberally, *see McGee,* 593 F.3d at 565-66, Class argues that the trial court improperly refused to allow Milton Correa's hearsay testimony that Salazar admitted to shooting the victim thus denying him his Sixth Amendment right to present a defense. *See Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Class has procedurally defaulted this claim because he failed to raise it through one full round of state court review. *See Johnson v. Hulett,* 574 F.3d 428, 431 (7th Cir. 2009). More specifically, Class did not fully and fairly present his constitutional claim to the Illinois Appellate Court because Class argued on appeal that the trial court abused its discretion when it did not allow Correa to testify as to Salazar's admission because it was hearsay evidence. *See Milone v. Camp,* 22 F.3d 693, 702 (7th Cir. 1994) ("admissibility of evidence is generally a matter of state law"). In particular, Class argued that Salazar's admission was admissible under the "statement against penal interest" hearsay exception – he did not argue that the trial court denied him the right to present a complete defense as guaranteed by the Sixth Amendment. To fully and fairly present his constitutional claim to the Illinois Appellate Court, Class was required to place both the operative facts and controlling legal principles before the state courts – a mere passing reference to a constitutional issue will not suffice. *See Sturgeon,* 552 F.3d at 610. In addition, Class does not argue that the trial court's evidentiary ruling violated his right to due process by denying him a fundamentally fair trial. *See Brown,* 599 F.3d at 616. The Court therefore cannot review this procedurally defaulted claim unless Class can show cause and actual

prejudice or that a fundamental miscarriage would occur if the Court did not consider this claim. *See id.* at 609. Here, Class fails to offer any exception for failing to fully and fairly present his constitutional claim to the Illinois Appellate Court.

Meanwhile, Class did not bring a claim based on Correa's hearsay testimony in his PLA to the Supreme Court of Illinois. Class maintains that the cause for this procedural default was that his attorney decided not to put this argument in his PLA because the Supreme Court of Illinois has a 20-page limit for PLAs pursuant to Supreme Court Rule 315(d).[2] Assuming that the Supreme Court of Illinois' page limit is an objective, external factor constituting cause, *see Guest v. McCann,* 474 F.3d 926, 930 (7th Cir. 2007), Class must also establish that this limitation prejudiced him, which he has failed to argue or explain. In sum, Class has procedurally defaulted any constitutional claim based on Correa's hearsay testimony, and thus the Court cannot determine the merits of this claim on collateral review. *See Johnson,* 559 F.3d at 752.

## III. Speedy Trial Claim – Claim III

In his last habeas claim, Class argues that the trial court abused its discretion by granting the state's motion to extend the 120 day speedy trial term by 30 days. In his direct appeal and PLA, Class squarely based his claim on a violation of state law, namely, the Illinois Speedy Trial Act, 725 ILCS 5/103-5(a). Therefore, Class did not fully and fairly present a constitutional claim based on the Sixth Amendment's guarantee of a speedy trial to the Illinois courts before

---

[2] Class also argues that the Supreme Court of Illinois was aware of his hearsay claim because he attached the Illinois Appellate Court's opinion to his PLA – an argument that the United States Supreme Court has rejected as excepting procedural default. *See Baldwin v. Reese,* 541 U.S. 27, 31, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).

bringing the present claim in his habeas petition. *See Sturgeon,* 552 F.3d at 610. Moreover, Class' claim based on a violation of state law is not cognizable on habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Curtis v. Montgomery,* 552 F.3d 578, 582 (7th Cir. 2009). The Court thereby denies Class' third habeas claim based on the Illinois Speedy Trial Act, 725 ILCS 5/103-5(a), as procedurally defaulted.

## IV. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As such, the Court must determine whether to grant Class a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El,* 537 U.S. at 336; *Evans v. Circuit Court of Cook County, Ill.,* 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Class must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). In cases where a district court denies a habeas claim on procedural grounds, the Court may issue a certificate of appealability only if the petitioner shows that (1)

jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

First, jurists of reason would not find it debatable that Class failed to state a valid claim of the denial of his Sixth Amendment right to effective assistance of counsel. As discussed, the Illinois Appellate Court's reasoning in denying this claim was well within the boundaries of permissible differences of opinion. *See Bennett,* 592 F.3d at 790. Also, the Court would be hard-pressed to conclude that jurists of reason would find it debatable that the Court was correct in ruling that Class procedurally defaulted his second and third habeas claims. As discussed in detail above, Class failed to fully and fairly present these constitutional claims through one full round of state court review. *See Gray v. Hardy,* 598 F.3d 324, 327 (7th Cir. 2010). Further, Class' procedurally defaulted claims are not excepted by cause and prejudice or the fundamental miscarriage of justice exception. *See Johnson,* 559 F.3d at 752. Therefore, the Court does not certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Class' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). Also, the Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

Dated: August 19, 2010

**ENTERED**

*[signature]*

**AMY J. ST. EVE**
**United States District Judge**